# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1075 | **DATE** | 7/29/2002 |
| **CASE TITLE** | | Horwitz v. City of Chicago | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment (#27-1)
Defendant's Petition for Attorneys Fees and Costs (#25-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the attached reasons, Defendant's Motion for Summary Judgment is GRANTED. Defendant's Petition for Attorney Fees and Costs (#25-1) is GRANTED. All pending motions and dates are terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | AUG 01 2002 |
| | Notified counsel by telephone. | | date docketed |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | |
| | courtroom deputy's initials | 02 JUL 31 PM 10:34 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARSHALL HORWITZ,<br>    Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO,<br>    Defendant. | No. **00 C 1075**<br><br>JUDGE WILLIAM J. HIBBLER |

**MEMORANDUM AND ORDER**


DOCKETED
AUG 1 2002

Marshall Horwitz ("Plaintiff") alleges the City of Chicago ("Defendant") discriminated against him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq. ("Discrimination Claim"), and retaliated against him in violation of the ADEA, 29 U.S.C. § 623(d) ("Retaliation Claim"). The Court now has before it Defendant's Motion for Summary Judgment for both claims. For the foregoing reasons, the Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

Plaintiff was born on January 14, 1941. He was initially hired by Defendant on or about November 3, 1980, as a Rehabilitation Construction Specialist in Defendant's Department of Housing. Plaintiff was laid off from his position on or about June 30, 1991, but was hired again by Defendant as a building inspector on June 16, 1992.

1

After receiving complaints from community members that Plaintiff wrongly approved a dilapidated building, Defendant set up, and Plaintiff attended, a pre-disciplinary meeting on or about June 20, 1997. At this meeting, Plaintiff was informed the matter had been investigated, and he was being considered for a 90-day suspension for "being inattentive to duty, loafing, sleeping on duty and loitering in the work area." (Def. SMF ¶ 21). On or about July 21, 1997, Plaintiff received notice that he would be suspended.

Also in July 1997, Defendant granted longevity pay increases to union employees based on their number of years of satisfactory service. Plaintiff did not receive the pay increase.

In October of 1997, Defendant issued a letter to its employees informing them of its new early retirement program ("buy-out"). At the time, Plaintiff met both eligibility criteria, as he was over fifty years of age and had at least ten years of experience with Defendant. Plaintiff chose not to participate in the buy-out and informed Defendant of such. Among the twenty-one employees who chose not to participate in the buy-out, only Plaintiff and one other person were discharged between June 1998 and December 2000.

On May 22, 1998, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") and alleged his 1997 suspension was the result of age discrimination.

On or about May 3, 1999, Defendant's Office of Budget and Management ("OBM") notified Plaintiff he was the subject of a disciplinary investigation that had started on April 7, 1999. The investigation included surveillance of Plaintiff on April 7, 8, and 12, 1999. Investigations of employees are done on a random basis for purposes of quality control and cannot be requested for a particular employee.

On May 5, 1999, Plaintiff filed a claim with the EEOC and alleged his superior, Mr. Ed Severns, harassed him based on Plaintiff's religion, national origin, and age, unlawfully retaliated against him, and, among other things, denied Plaintiff pay increases.

On or about June 13, 1999, OBM issued a report of the investigation and found Plaintiff "falsified his activity sheet and misrepresented his job performance in violation of [Defendant's] Personnel Rules." (Def. SMF ¶ 36). Based on this report, the Commissioner of Defendant's Department of Buildings began termination proceedings against Plaintiff. Defendant's Law Department and Personnel Department approved the discharge on January 11 and January 14, 2000, respectively. On January 20, 2000, at a pre-disciplinary meeting, Plaintiff received notice of the charges and evidence of his violation. On February 3, 2000, Defendant notified Plaintiff he was discharged based on the results of OBM's investigation. Plaintiff filed a claim with the

3

EEOC, on or about March 13, 2000, and alleged Defendant discriminated against him on the basis of his age and unlawfully retaliated against him.

**STANDARD OF REVIEW**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For there to be a genuine issue of material fact, there must be sufficient evidence that, when viewed in a light most favorable to the non-moving party, a reasonable jury could find for the non-moving party. *Smith v. Severn*, 129 F.3d 419, 425 (7th Cir. 1997). As credibility and intent are crucial to cases of employment discrimination, this standard must be applied with scrutiny. *Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 918-19 (7th Cir. 1996) (citations omitted).

The initial burden is on the moving party to show the absence of any "genuine issue[s] [of] material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden is met, the non-moving party must submit specific facts to support his claim and demonstrate a trial is warranted. *Id.* at 324. The non-moving party cannot rely solely on the allegations in his pleadings, but "'must present sufficient evidence to show the existence of each element of [his] case on which [he] will bear the burden at trial.'" *Filipovic v. K&R Express Sys., Inc.*, 176

4

F.3d 390, 395 (7th Cir. 1999) (citations omitted). In this case, Plaintiff failed to file a response to Defendant's Motion for Summary Judgment. Therefore, the Court can rely only on those documents already before it.

Typically, a court views "the [evidence] and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Smith*, 129 F.3d at 426. However, if the non-moving party fails to file a response to Defendant's Statement of Undisputed Material Facts in Support of its Motion ("Def. SMF"), the court will take the plaintiff's lack of response as a binding admission of everything in the Fact Statement. No. Dist. Ill. Local Gen. R. 56.1(b)(3)(B); *see e.g. Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 409 (7th Cir. 1997). Here, Plaintiff failed to file a response to Defendant's statement of facts. As such, the Court "'depart[s] from [its] usual posture of construing all facts in favor of the non-moving party'" and takes everything set forth in the Fact Statement as uncontested. *Smith*, 129 F.3d at 426 (citing *Johnson v. Gudmundsson*, 35 F.3d 1104, 1108 (7th Cir. 1994)); *see also Giannopoulos*, 109 F.3d at 409.

Further, the Court notes Plaintiff is acting pro se. Accordingly, Defendant was required to and did provide Notice to Pro Se Litigant Opposing Summary Judgment when Defendant filed its Motion for Summary Judgment. No. Dist. Ill. Local Gen. R.

56.2. The purpose of this notice is to explain to a pro se litigant the requirements and implications when the other party seeks summary judgment. Defendant complied with this requirement. Therefore, Plaintiff cannot claim ignorance of the law or claim he did not understand the consequences of his inaction.

**ANALYSIS**

<u>ADEA Claims Generally</u>

The ADEA forbids an employer from discriminating against an individual on the basis of his age. 29 U.S.C. § 623(a). In order to succeed on an age discrimination claim, a plaintiff "must demonstrate that his age was 'a determining factor' in his employer's decision to terminate his employment." *Wolf*, 77 F.3d at 919 (citations omitted). A plaintiff need not show that age was the only factor, but that it was sufficient enough that "but for" a plaintiff's age, the employer would not have terminated him. *Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 301 (7th Cir. 1996).

The ADEA also forbids an employer from retaliating against an employee for filing a complaint under the ADEA. 29 U.S.C. § 623(d).

To prove an employer engaged in these unlawful activities, a plaintiff can provide direct evidence or use the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*,

6

411 U.S. 792, 802 (1973). As Plaintiff sets forth no direct evidence supporting either claim, an analysis of both claims will follow under the indirect method. Under this method, Plaintiff bears the initial burden to establish a prima facie case for each claim. *Testerman*, 98 F.3d at 301. If Plaintiff is successful, then a presumption of discrimination is found, and the burden shifts to Defendant to show it had a legitimate, non-discriminatory reason for its decision. *Id.* If Defendant is successful, then the ultimate burden rests with Plaintiff to prove that the proffered reason was merely a pretext for discrimination. *Id.*

### Age Discrimination Claim

To establish a prima facie case of age discrimination, Plaintiff must show: (1) he was a member of the protected group (40 years of age and older); (2) he was performing his job satisfactorily; (3) he was discharged; and (4) other similarly situated employees were treated more favorably. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir. 1998). It is undisputed Plaintiff was a member of the protected group and was discharged by Defendant. Therefore, the Court must determine whether Plaintiff has satisfied the remaining two elements.

First, Plaintiff must demonstrate he was performing his job satisfactorily. As Defendant's reason for discharging Plaintiff was based on a belief he was not performing his job

7

satisfactorily, the same facts and circumstances that surround this element of the prima facie case also represent Defendant's proffered justification for termination. *See Adreani*, 154 F.3d at 394; *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1404 (7th Cir. 1996). The key analysis is whether Plaintiff can rebut these alleged performance deficiencies and establish pretext. *See Fuka*, 82 F.3d at 1404; *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 372 (7th Cir. 1992) (assuming a prima facie case in order to reach pretext, which is the "crux of the matter" in terminations based on alleged performance deficiencies). Therefore, the Court will address Plaintiff's job performance in regards to pretext.

Second, Plaintiff must demonstrate that younger, similarly situated employees were treated more favorably. While numerous factors are considered in determining whether employees are "similarly situated," the courts typically focus on whether employees with similar employment histories and positions received similar punishment for the same or similar misconduct. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000). Although the employees can also be within the protected age group (40 years and older), they must be "substantially younger." *Fuka*, 82 F.3d at 1404. Here, Plaintiff does not provide any evidence of fellow employees that meet these criteria. Rather, he makes only broad generalizations that

8

Defendant imposed unprecedented scrutiny on those that declined to accept the buy-out and not on those that accepted the buy-out or were not eligible for the buy-out. To establish this prima facie element, though, Plaintiff must go beyond these generalizations. Without any evidence of similarly situated employees, Plaintiff has created no genuine issue of material fact. Because Plaintiff has failed to satisfy this element of the prima facie case, his claim of age discrimination fails as a matter of law. The Court, though, will proceed with the *McDonnell Douglas* analysis and assume for the sake of argument Plaintiff could establish a prima facie case.

Defendant claims it terminated Plaintiff due to the results of the surveillance and the discovery of evidence that Plaintiff "falsified his timesheets and misrepresented his job performance in violation of Defendant's Personnel Rules." (Def. SMF ¶ 36). On its face, this is a legitimate, non-discriminatory reason for discharging Plaintiff, and is supported by the results of the surveillance attached to Defendant's statement of facts. The Court must therefore determine whether Plaintiff has met his burden and proven this reason was merely pretext for discrimination.

Plaintiff alleges that as soon as he informed Defendant of his decision to not accept the buy-out, he became the subject of unprecedented scrutiny that resulted in a 90-day suspension, the

denial of an automatic pay increase, and secret surveillance, the results of which led to his termination. Plaintiff's claim surrounds these three incidents, and the Court will address each one in turn.

First, Plaintiff points to a 90-day suspension in 1997. The Court ruled this claim is time-barred, but Plaintiff may present the suspension as evidence of Defendant's discrimination against Plaintiff. However, the allegations of community members that Plaintiff wrongly approved a dilapidated building initiated the suspension. Plaintiff provides no evidence the community members had any reason to fabricate their story or falsely create their complaints or that Defendant was misguided in investigating their serious allegations.

Additionally, the temporal causation that Plaintiff infers in his Amended Complaint is directly contradicted by the timeline set forth in Defendant's statement of facts, which, due to Plaintiff's failure to file a response, must be construed as uncontested by Plaintiff. The suspension proceedings began with a pre-disciplinary meeting on or about June 20, 1997. Defendant made the ultimate decision to suspend on or about July 21, 1997. Defendant did not officially offer the early retirement program to eligible employees until October of 1997, though, and Plaintiff did not inform Defendant of his decision to not participate until December of 1997 or January or February of

1998. Plaintiff's claim rests only on general allegations that the suspension was "unprecedented" and "grossly disproportionate" to the alleged misconduct. Plaintiff fails to prove the buy-out was discussed months earlier and that he received pressure from management. Plaintiff has therefore created no genuine issue of material fact. It is impossible to infer from the evidence that Defendant intended to use the suspension to punish Plaintiff for not accepting the buy-out. Therefore, the 90-day suspension does not support Plaintiff's claim of discrimination.

Secondly, Plaintiff alleges Defendant wrongly denied him a pay increase in July of 1997. The Court initially allowed this claim to proceed based on an inference from Plaintiff's Amended Complaint that Plaintiff did not learn that the pay increase was denied until August 5, 1998. For purposes of ruling on Defendant's Motion to Dismiss, this inference was sufficient. But, further discovery has established that Plaintiff learned of the denial in July or October of 1997. Plaintiff filed his claim with the EEOC on May 5, 1999. Therefore, this claim is time-barred, as it was not filed within 300 days of discovering that the pay increase was denied. 29 U.S.C. § 629(d)(2). But, as with the 90-day suspension, it can be presented as evidence of discrimination against Plaintiff.

According to Plaintiff, this particular pay increase is based solely on longevity and should have been automatically

11

granted to Plaintiff. According to Defendant's statement of fact, though, this pay increase is based on the number of years of *satisfactory* service and is not automatic. Accordingly, Plaintiff has offered no evidence he was performing his job satisfactorily or employees not eligible for the buy-out or that accepted the buy-out were treated differently. At the time, Defendant was in the midst of a pre-disciplinary proceeding against Plaintiff regarding the dilapidated building. And, Plaintiff's friend and co-worker, Mr. Kenneth Young, acknowledged that approximately four substantially younger individuals were also denied the pay increase. Also, this pay increase was denied months before Plaintiff informed Defendant he would not participate in the buy-out. Plaintiff has provided no evidence he was denied the pay increase in retaliation for not accepting the buy-out. Therefore, this incident does not support Plaintiff's claim of discrimination.

Third, Plaintiff claims Mr. Severns told Plaintiff he was going to use surveillance to set Plaintiff up and get him fired. But, according to Defendant, surveillance of employees is done on a random basis for quality control and cannot be requested for a particular individual. Plaintiff has provided no evidence Mr. Severns requested surveillance or Defendant violated their policy by granting it. Therefore, a claim that the surveillance against Plaintiff constituted "unprecedented scrutiny" is not viable.

The results of the surveillance, though, became the proffered reason for Plaintiff's termination. To show this reason was given as a pretext for discrimination, Plaintiff must show the reason had no basis in fact, did not actually motivate Defendant's decision, or was insufficient to motivate Defendant's decision. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 473 (7th Cir. 2002). "Pretext means more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.'" *Wolf*, 77 F.3d at 919 (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)). It does not matter whether the termination was sensible or a good business decision, just whether the employer honestly believed the reason for it. *McCoy*, 957 F.2d at 373; *Giannopoulos*, 109 F.3d at 411. That is, even given the results of the surveillance, Plaintiff would not have gotten fired "but for" his age. *Adreani*, 154 F.3d at 395. Plaintiff has provided no evidence Defendant did not believe the reason for his termination or his buy-out decision was a determining factor. Additionally, Plaintiff fails to show the results of the surveillance were incorrect or that Defendant was not justified in finding his conduct worthy of termination. While it is true "[e]mployment discrimination cases often turn on questions of intent and credibility," and courts must leave all questions of fact to the factfinder, summary judgment cannot be

avoided based only on a hope a jury would not believe Defendant. *Giannopoulos*, 109 F.3d at 411.

Plaintiff does claim, though, that he "discharged all duties assigned to him in an excellent manner and was consistently praised for his work performance." However, the perception of the employer, and not of the employee, is the crucial consideration. *Adreani*, 154 F.3d at 398. Plaintiff's own opinions about his performance or qualifications do not create a genuine issue of material fact. *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996); *Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992). Even if Plaintiff could succeed in creating a genuine issue of material fact regarding his job performance, he has still not provided any evidence that Defendant did not believe the reason for terminating him. *Gustovich*, 972 F.2d at 848; *Adreani*, 154 F.3d at 399.

Finally, Plaintiff alleges Defendant had a pattern and practice of age discrimination. The Court allowed this claim only as collateral evidence of discrimination against Plaintiff. To support this claim, Plaintiff appears to rely only on the fact his friend and co-worker, Mr. Kenneth Young, filed a similar age discrimination claim against Defendant. But, the mere fact a fellow employee was also terminated and also fell within the protected class is insufficient to prove that Defendant discriminated against Plaintiff. *Testerman*, 98 F.3d at 305

14

(finding evidence that five other employees within the protected class were also fired is not sufficient to help prove age discrimination against the plaintiff); *see also Adreani*, 154 F.3d at 400; *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1014 (7th Cir. 2000). Additionally, the fact Defendant has an early retirement program does not, by itself, show a pattern of trying to rid itself of older workers. *Henn v. National Geographic Soc.*, 819 F.2d 824, 828 (7th Cir. 1987). Therefore, Plaintiff has failed to establish a pattern or practice of age discrimination by Defendant.

Retaliation Claim

Although Plaintiff's claim of age discrimination has failed as a matter of law, he may still allege a claim of retaliation. *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 612 (7th Cir. 2001). Under the burden-shifting method, Plaintiff must first establish a prima facie case of retaliation. *Id.* To do so, Plaintiff must show: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *Filipovic*, 176 F.3d at 398. In this case, the Court needs to venture no further than Plaintiff's original burden of establishing a prima facie case of retaliation. It is worth mentioning, though, based on the evidence provided, the Court does find a legitimate non-

discriminatory reason for discharging Plaintiff and no evidence of pretext. But, "[i]t is not always necessary to march through this entire process if a single issue proves to be dispositive." *Lesch*, 282 F.3d at 473; *see also Paluck*, 221 F.3d at 1011 (finding that it is not necessary to proceed in the *McDonnell Douglas* analysis if there is no prima facie case).

It is undisputed that Plaintiff engaged in statutorily protected activity by filing three claims with the EEOC and Plaintiff's discharge was an adverse employment action. To satisfy the third element, Plaintiff must show a causal connection between the first two elements.

As Plaintiff has not put forward any theory of retaliation, he appears to rely only on temporal causation as circumstantial evidence of retaliation. *See Paluck*, 221 F.3d at 1009. To do so, "the termination must have occurred 'fairly soon' after the employee's protected expression." *Id.* at 1009-10 (quoting *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998)). Here, the sequence of events does not evidence retaliation. At the point of Plaintiff's termination, it had been twenty-one months since the first claim and nine months since the second. This proximity is insufficient to establish an inference of causation. *Davidson*, 133 F.3d at 511 (five-month lapse does not suggest a causal link); *Horwitz*, 260 F.3d at 613 (six-month lapse); *Adusumilli v. City of Chicago*, 164 F.3d 353,

16

363 (7th Cir. 1998) (eight-month lapse). Although the failure to establish a temporal link does not preclude a claim of retaliation, Plaintiff must come forward with additional evidence to support it. *Horwitz,* 260 F.3d at 613; *Paluck,* 221 F.3d at 1010; *Davidson,* 133 F.3d at 511. Here, Plaintiff has not. Therefore, Plaintiff cannot establish a prima facie case and his claim of retaliation fails as a matter of law.

**IT IS SO ORDERED.**
**DATE:** July 29, 2002

*/s/ Wm. J. Hibbler*
Hon. William J. Hibbler
United States District Court Judge